## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

HARDING BROTHERS, Inc.,
a Florida Corporation
7200 Corporate Center Drive
Miami, FL 33126

PATRICK MICHAEL MOLLOY,
a Florida Resident

DIANE MARIA EARLEY,
a Florida Resident,

MARIO PATRICK MOLLOY,
a Florida Resident

       *Plaintiffs*,

                            Case No.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
245 Murray Ln. SW
Washington, DC 20528

CHAD F. WOLF, in his official capacity as
United States Secretary of Homeland Security;
245 Murray Ln. SW
Washington, DC 20528

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES ("USCIS"),
20 Massachusetts Ave NW
Washington, DC 20529

KENNETH T. CUCCINELLI, in his official
capacity as Acting Director of the United States
Citizenship and Immigration Services,
20 Massachusetts Ave NW
Washington, DC 20529

KATHY A. BARAN, in her official capacity as
Director, USCIS California Service Center
24000 Avila Road
Laguna Niguel, CA 92677
              *Defendants.*

------------------------------------------------------------------------------

## COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201 et seq. AND JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT (APA) 5 U.S.C. §701, et seq.

Plaintiffs, by and through their undersigned attorneys, commence this action against the above-named Defendants, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      This is an action for Declaratory Judgment and Judicial Review under The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. and the Administrative Procedure Act ("APA") 5 U.S.C. § 701, et seq.

2.      Simply stated, the Congressionally stated purpose for the L-1 intracompany transferee executive or manager visas is to "eliminate problems faced by international companies having offices abroad in transferring key personnel freely within the organization." Temporary Alien Workers Seeking Classification Under the Immigration and Nationality Act, 52 Fed.Reg. 5738, 5739 (Feb. 26, 1987).

3.      In the instant case, Defendants have erroneously denied a petition for renewal of Plaintiffs' existing L-1 visa for Mr. Patrick Molloy even though it provided substantial record evidence that Mr. Molloy is the Managing Director of Plaintiffs' entire operation in Florida and is responsible for supervising a total of eleven employees, including eight managerial direct reports.

4.      Defendants' erroneous denial of Plaintiffs' L-1 extension of stay visa petition has unnecessarily injected significant hardship into the operation of a previously successful UK company which has created many U.S. jobs, and has placed the immigration status of Mr. Molloy, his wife, and his minor child into significant jeopardy.

5.      Upon review of the facts and the governing law of this case, it should become incredibly apparent that this is not a case that should have led to a denial of the extension of stay visa petition and the potential deportation of a very talented individual and his family out of the United States in the midst of the COVID-19 crisis.

6.      On April 12, 2017, Defendant U.S. Citizenship and Immigration Services ("USCIS") approved Plaintiffs' petition for an L-1 visa under Section 101(a)(15)(L) of the Immigration and Nationality Act ("INA") and 8 C.F.R. § 214.2(l) for the period from April 12,

2017 to March 13, 2020 to permit Mr. Patrick Molloy to serve as Managing Director of Harding Brothers, Inc.—the U.S. subsidiary of the United Kingdom company Harding Brothers Holdings Limited—a company that specializes in operating the on-board retail operations of over 250 shops on 62 cruise ships.  *See* Ex. 1.  As part of this approval, Mr. Molloy's wife, Diane Maria Earley, and his child, Mario Molloy, each received what is known as derivative L-2 visa status.

7.     During this time period, Mr. Molloy worked dutifully in that executive position, earning over $287,000 per year in total compensation—an amount that would be incomprehensible to pay to an individual not working in an executive or managerial position. *See* Ex. 2.

8.     On January 8, 2020, Plaintiffs filed a Petition for Nonimmigrant Worker (Form I-129) seeking to renew the statuses of Mr. Molloy, his wife, and his child.  Plaintiffs submitted a 241 page submission explaining how Mr. Molloy worked at Harding Brothers overseeing, managing, and directing a team of eleven people, including: two account directors, one souvenirs buyer, one human resources manager, one trunk and special events director, one loss prevention manager, one marketing coordinator, one customer service representative—as well as a district manager, an executive assistant, and a visual merchandiser who reported to Mr. Molloy's direct reports.   The submission also explained that Mr. Molloy was responsible for delivering the complete local representation service obligations of Harding Brothers, Inc. in the United States (meaning he was the man in charge of the U.S. operation).  Plaintiffs' application—which ended up consisting of over 600 pages of evidence after a supplemental filing was submitted—met all of the statutory and regulatory burdens imposed upon L-1 visa applicants.

9.     Nevertheless, on March 18, 2020, USCIS denied Plaintiffs' application for renewal of their L-1 and L-2 visa statuses, respectively, on the inexplicable basis that Mr. Molloy was "not a manager or executive in the United States." *See* Ex. 3.

10.     Defendants' decision misguidedly held Plaintiffs to previously unannounced evidentiary standards that were invented entirely out of whole cloth by the Defendants in the middle of the case—and had no basis in, or citation to, any actual governing statutes, regulations, or cases.

11.     Nothing had changed between 2017 when Mr. Molloy's visa status was first approved and what he was doing in 2020 when his renewal was denied—other than that Harding Brothers Inc. actually had *more* employees for Mr. Molloy to supervise than the company has in 2017.

12.     All of the foregoing claims are based upon the inappropriate agency action of denying the I-129 petition for Mr. Molloy's L-1 extension of stay visa status for no legitimate reason, and for causing Mr. Molloy and his family to be out of status beginning on March 18, 2020, by denying his petition.

13.     Plaintiffs, as applicants for the renewal of Mr. Molloy's L-1 status (I-129) and his family's derivative L-2 status (I-539), are suing Defendants in their official capacity.

14.     As a result of the misguided action of the aforementioned Defendants that is not based on the law, Plaintiffs suffered a legal wrong and are adversely affected within the meaning of the INA.

## PARTIES

15.     Plaintiff, Harding Brothers, Inc. is a Florida corporation that is a subsidiary of Harding Brothers Holdings Limited, a U.K. company established in 2007.  Harding works in partnership with twenty of the world's top cruise brands to provide on-board retail shopping stores inside of over sixty cruise ships.

16.     Plaintiff, Patrick Michael Molloy, is a citizen of Ireland who resides in Florida with his wife and son.  He is a highly experienced travel retail executive with over 20 years of service in this industry.  He was lawfully employed by Harding Brothers, Inc. as Managing Director on L-1 non-immigrant status and was seeking to renew his status for an additional three

years so he could continue to serve as Managing Director.  Upon receiving his renewal, Plaintiff

Molloy was to be responsible for continuing to use his talents, training, and experience to expand

Harding Brothers' business activities in the United States, which would create more jobs at

Harding Brothers for American workers here in the United States.

17.	Plaintiff, Diane Maria Earley, is a UK national and the spouse of Plaintiff Patrick

Michael Molloy.  Her L-2 visa status in the United States is dependent upon the granting of her

husband's L-1 visa petition.

18.	Plaintiff, Mario Patrick Molloy, is a UK national and the minor child of Plaintiff

Patrick Michael Molloy and Plaintiff Diane Maria Earley.  His L-2 visa status in the United States

is dependent upon the granting of his father's L-1 visa petition.

19.	Defendant, Department of Homeland Security ("DHS") is a federal agency

responsible for administering the laws of Congress as to the approval or denial of immigration

benefits under the INA and is the parent agency of U.S. Citizenship and Immigration Services.

**20.**	Defendant, U.S. Citizenship and Immigration Services, is an agency of the federal

government within the Department of Homeland Security and is responsible for the administration

of laws and statutes governing immigration and naturalization and the adjudication of petitions

for immigration and nonimmigrant benefits, including petitions for nonimmigrant workers and

petitions and applications for extensions of status.

**21.**	Defendant, Chad F. Wolf, is the Acting Secretary of the United States Department

of Homeland Security ("DHS"), with responsibility for the administration of applicable laws and

statutes governing immigration and naturalization.  He is generally charged with enforcement of

the Immigration and Nationality Act and is further authorized to delegate such powers and

authority to subordinate employees of DHS.  More specifically, the Secretary is responsible for

the adjudication of petitions for nonimmigrant workers and petitions and applications for

extension of status.

22.     Defendant, Kenneth T. Cuccinelli, is the Acting Director of U.S. Citizenship and Immigration Services, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration rules, services, policies, and priorities. These functions include adjudication of petitions for nonimmigrant workers and petitions and applications for extension of status.

23.     Defendant Kathy A. Baran, is the Director of the USCIS California Service Center ("CSC") and is a federal officer acting within the parameters of her authority as the CSC's decision maker concerning all petitions and applications for immigration benefits. In her official capacity, Defendant Baran was responsible for ensuring that Plaintiffs' petition and applications for extension of L-1 and L-2 visa status, respectively, would be adjudicated according to the statutes and regulations of the United States.

## JURISDICTION AND VENUE

24.     This court has jurisdiction of this action pursuant to 28 U.S.C. § 2201, *et seq.*, 28 U.S.C. § 1331, and 5 U.S.C. 701 and 702 *et seq.*, and this action is timely under 28 U.S.C. § 2401. Relief is requested pursuant to said statutes. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Further, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that: "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Review is also warranted and relief sought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, 702 et seq., and § 706(1).

25.     Venue properly lies within this district pursuant to 28 U.S.C. § 1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where the Defendants reside.

**STANDING**

26.     Harding Brothers, Inc. has a legally protected interest in a decision by the Defendants on its I-129 petition filed on Mr. Molloy's behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2).  The invasion of this right has caused Harding Brothers, Inc. concrete and particularized injury in that, as a result of this invasion, Harding Brothers can no longer employ Mr. Molloy's expert executive and managerial services after his L-1 visa expired and so cannot derive the expertise and revenue it previously received from the use of his services.  In addition, there is a causal connection between the injury-in-fact and the Defendants' challenged behavior in that it is precisely the Defendants' denial of Mr. Molloy's I-129 Petition for a Nonimmigrant Worker which will prevent him from working for Harding Brothers in the future and it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Harding Brothers to employ Mr. Molloy again and so once more derive revenues from his services. Accordingly, Harding Brothers, Inc. has standing to bring this action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

27.     Mr. Molloy likewise has a legally protected interest in a decision by Defendants on Harding Brothers Inc.'s petition filed on his behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and this right has been violated because of the improper denial of the I-129 Petition for a Nonimmigrant Worker filed on his behalf.  The violation of this right has caused him concrete and particularized injury in that, as a result of this violation, he likely can no longer be employed by Harding Brothers after his L-1 visa expires and so cannot derive the revenue he previously received from his employment. In addition, his presence in the United States has been rendered unlawful.  Moreover, there is a causal connection between the injury-in-fact and the Defendants' challenged behavior in that it is precisely the Defendants' denial of Mr. Molloy's I-129 Petition for a Nonimmigrant Worker which prevents him from working for Harding Brothers in the future and it is certain that the

injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Harding Brothers to employ Mr. Molloy and so enable him to support himself and his family and lawfully remain in the United States.  Further, Harding Brothers wishes to continue to employ Mr. Molloy in the offered position. Accordingly, Mr. Molloy has standing to bring this action. *See Lujan*, *supra*.

28.    Dianne Maria Earley and Mario Patrick Molloy each likewise have a legally protected interest in a decision by Defendants on Harding Brothers Inc.'s petition filed on Patrick Michael Molloy's behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and this right has been violated because of the improper denial of the I-129 Petition for a Nonimmigrant Worker filed on his behalf.  The violation of this right has caused them concrete and particularized injury in that, as a result of this violation, their presence in the United States has been rendered unlawful.  Moreover, there is a causal connection between the injury-in-fact and the Defendants' challenged behavior in that it is precisely the Defendants' denial of Mr. Molloy's I-129 Petition for a Nonimmigrant Worker which prevents them from lawfully remaining in the United States and it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Harding Brothers to employ Mr. Molloy and so enable them to lawfully remain in the United States as derivative visa holders.  Accordingly, each of Dianne Maria Earley and Mario Patrick Molloy have standing to bring this action. *See Lujan*, *supra*.

## EXHAUSTION OF REMEDIES

29.    Plaintiffs have exhausted their administrative remedies. The denial of the Plaintiffs' I-129 Petition for a Nonimmigrant Worker for Mr. Molloy constitutes a final administrative action by which "rights or obligations have been determined," or from which "legal consequences will flow," that may be challenged in federal court. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

**FACTS**

## I. Introduction

30.     The following recitation of facts is based solely on the record evidence provided to Defendants.  Plaintiff, Harding Brothers, Inc., was established in the United States in the State of Florida on July 5, 2007 and focuses its business activities on providing local representation and management support services to Harding Brothers Retail Limited (UK Company).  As of the time of the filing of the L-1 extension of stay visa application, it had 12 employees and for the fiscal year ended December 31, 2018, it had revenues of $1.6M.

31.     Harding Brothers Retail Limited was established in the U.K. on February 23, 2007 and focuses its business activities on running retail shops on cruise ships.  Currently, Harding Brothers Retail Limited has 155 direct employees and approximately 650 members of staff working in the stores provided by a third party.  For the fiscal year ended December 31, 2018, it had revenues of GBP 170 million ($218 million).

32.     Mr. Patrick Michael Molloy is an Irish national. Mr. Molloy is a highly experienced travel retail professional with over 20 years of experience operating at management, senior management and executive levels. Throughout his career, he has demonstrated his ability to lead diverse teams of multi-national professionals to new levels of success in a variety of competitive, cutting-edge markets, and fast-paced environments. He has a very strong retail and purchasing background, with an impressive track record of more than 15 years' experience in strategic planning, project and product management, business development and succession strategies. He has proven his ability to successfully analyze an organization's critical business requirements, identify deficiencies and potential opportunities and develop innovative and cost-effective solutions for enhancing competitiveness, increasing revenues, delivering profit and improving customer service offerings.

33.     Beginning on October 4, 2017 and until March 13, 2020, Mr. Molloy was employed by the Petitioner as Managing Director, in which position he was responsible for

delivering the complete local representation service obligations of Harding Brothers, Inc. to Harding Brothers Retail Limited (the client company). This involves 5 key areas of responsibility: Retail Execution; Logistics Execution; Cruise Line Relationship Management; Local Team Management and Coordination and Reporting with Harding Brothers Retail Limited.  Simply put, Mr. Molloy is responsible for the U.S. operations of Harding Brothers.

34.      In this regard, as Managing Director, Mr. Molloy was responsible for overseeing, managing, and directing all aspects of the company's relationship with cruise line customers, from day-to-day inquiries to long-term strategic initiatives ensuring revenue goals and customer satisfaction levels are maintained at all times.

35.      As Managing Director, Mr. Molloy was responsible for overseeing, managing, and directing a team of eleven people, including: two account directors, one souvenirs buyer, one human resources manager, one trunk and special events director, one loss prevention manager, one marketing coordinator, one customer service representative, as well as a district manager, an executive assistant, and a visual merchandiser who reported to Mr. Molloy's direct reports.

36.      From December 2015 to October 4, 2017, Mr. Molloy was employed by Harding Brothers Retail Limited, Plaintiff's affiliate company in the U.K., as Contract Director overseeing the delivery by Harding Brothers, Inc. of its services to Harding Brothers Retail Limited, in which position he was responsible for Retail Execution Support and Oversight, Logistics Execution, and developing the company's relationship with cruise lines to foster support and encourage investment in key initiatives.

37.      By all accounts, Mr. Molloy performed excellently at this job and received total annual compensation of over $287,000.

**II. L-1 Visa Renewal Application**

38.      On January 8, 2020, Plaintiff Harding Brothers, Inc. filed Form I-129 Petition for a Nonimmigrant Worker on behalf of Plaintiff Patrick Michael Molloy, in order to renew his L-1 visa status in the United States until 2022.  The application was assigned USCIS case number

WAC2008250231.

39.     Plaintiffs' application was accompanied by an I-539 Application to Extend L-2

Visa Nonimmigrant Status for Diane Maria Earley (Mr. Molloy's wife) and Mario Patrick Molloy

(Mr. Molloy's and Ms. Earley's minor child).  As a matter of law, if Patrick Michael Molloy's L-

1 status was extended, the derivative L-2 status of his wife and child would also have been granted.

40.     Plaintiffs' petition provided the following evidence that Patrick Michael Molloy

was an executive or manager at Harding Brothers, Inc.:

a.  A letter of support from Neil Harding, President of Harding Brothers, Inc.,
    detailing all of Patrick Michael Molloy's executive and managerial duties and
    explaining that Mr. Molloy had been and was continuing to be "responsible for
    delivering the complete local representation service obligations of Harding
    Brothers Inc. to Harding Brothers Retail Limited (the client company)."  The
    letter also indicated that Mr. Molloy had been and was continuing to be
    "responsible for overseeing, managing and directing all aspects of the
    company's relationship with cruise line customers, from day-to-day inquiries
    to long-term strategic initiatives ensuring revenue goals and customer
    satisfaction levels are maintained at all times."  The letter was eight pages long
    and enumerated Mr. Molloy's tasks, duties, and responsibilities in great detail;

b.  A letter of support from James Prescott, Managing Director of Harding
    Brothers Retail Limited in the UK, the UK affiliate company of the Petitioner,
    setting forth the nature of Mr. Molloy's managerial duties and responsibilities
    when he worked in the UK, prior to being sent to the U.S. to work with the
    Petitioner;

c.  Tax records for Harding Brothers, Inc., showing payment of over $1 million in
    salaries and wages (i.e. people that Mr. Molloy supervises);

d.  An organizational chart for Harding Brothers, Inc. showing Patrick Molloy at
    the very top of the organization with two levels of supervision below him, along

with the names and duties of the people Mr. Molloy was responsible for directly and indirectly supervising. *See* Ex. 4;

e.   Copies of the resumes of each of Harding Brothers, Inc.'s employees that report to Mr. Molloy with a detailed description of their duties;

f.   An organizational chart for Harding Brothers Retail Limited showing where Mr. Molloy's previous managerial position in the U.K. with Petitioner's U.K. affiliate fell within the company's structure and listing employees by name and title, and for those employee's in his direct line of hierarchy, also providing their salary, educational background and a brief description of their duties and responsibilities;

41.   This evidence also should have been more than sufficient to approve Plaintiffs' I-129 and I-539 petitions to extend L-visa status.  Nevertheless, on January 21, 2020, USCIS sent a request for evidence (RFE) to Plaintiffs indicating that Plaintiffs had not proven that Mr. Molloy was acting as an executive or a manager of Harding Brothers, Inc. *See* Ex. 5.  The RFE provided the following list of suggested evidence Plaintiffs could provide to show that Mr. Molloy was a manager or executive.  This list included the following items (along with a statement that Plaintiffs could meet their evidentiary burden by submitting "one, some, *or* all of these items.") *Id.* (emphasis added)  The list of suggested items included:

a.   "A letter from an authorized representative of the U.S. entity describing how the beneficiary will be employed in a managerial position. The letter should describe the beneficiary's typical managerial duties, and the percentage of time to be spent on each;" **(evidence that had already been provided);**

b.   "An organizational chart or diagram, showing the U.S. entity's organizational structure and staffing levels." **(evidence that had already been provided);**

c.   Copies of the U.S. entity's State Quarterly Wage Reports for the 3rd and 4th quarter of 2019 that were accepted by the State of Florida.;

     d.  Copies of the U.S. entity's payroll summary, and Forms W-2, W-3, and 1099-MISC showing wages paid to all employees under the beneficiary's direction;

     e.  Copies of performance appraisals or reviews conducted by the beneficiary for any subordinate employees or any evidence that demonstrates the beneficiary has sufficient managerial authority over subordinate employees and is engaged in the hiring and firing of subordinates or recommends the hiring and firing of subordinates as well as other personnel actions;

     f.  Copies of employment agreements entered into by newly hired employees who will be managed by the beneficiary.

42.     It is important to note three things. First, of the six suggested items requested by USCIS in the RFE, two had already been provided. Second, the Request for Evidence itself indicated that the evidentiary burden could be met by submitting "one, some, **_or_** all of these items." *See* Ex. 5 (emphasis added). Third, and most importantly, none of these items are listed in either statutes or regulations as items that are required in order for an L-1 visa to be approved (nor were any such legal citations provided).

43.     Nevertheless, on March 6, 2020, Plaintiffs provided a 380 page response to the RFE providing the following additional evidence:

     a.  A March 2, 2020, letter from James Prescott, Managing Director of Harding Brothers Retail Limited, providing all of the information that the RFE requested be provided in the letter from an authorized representative, *see* Ex. 6. (this submission addressed the USCIS request outlined in paragraph 42(a) above);

     b.  A copy of the Harding Brothers, Inc.'s organizational chart, which was submitted with the underlying L-1 extension of stay visa petition, along with the resumes Harding Brothers has on file for each employee and a statement

that there have been no significant changes to this organizational chart (this submission addressed the USCIS request outlined in paragraph 42(b) above);

c.   Petitioner's RT-6 Florida Department of Revenue Employer's Quarterly Report for the first, second, third and fourth quarter of 2019 (this submission addressed the USCIS request outlined in paragraph 42(c) above);

d.   Payroll Details for January through December 2019 and Harding Brothers' Forms 941 (Employer's Quarterly Federal Tax Return) for the first, second, third and fourth quarters of 2019 (this submission addressed the USCIS request outlined in paragraph 42(d) above);

e.   Copies of 2019 employee appraisals for Mr. Molloy's direct reports (this submission addressed the USCIS request outlined in paragraph 42(e) above);

f.   Copies of employment agreements entered into by seven employees (and signed by Mr. Molloy when he was the supervisor). In addition, Plaintiffs provided new hire emails and termination letters signed by Mr. Molloy. (this submission addressed the USCIS request outlined in paragraph 42(f) above);

44.    Plaintiffs therefore provided not just "one" or "some" of the items requested by USCIS (as the RFE indicated was permissible), but instead actually provided "all" of the items requested in the RFE.

45.    As such, there was no permissible legal basis for Defendants to deny an L-1 renewal for a person performing the same managerial and executive tasks he had already been approved by Defendants to perform in 2017.

46.    Despite meeting all statutory and regulatory requirements—and after providing all of the evidence USCIS newly required in the middle of the process—on March 18, 2020, USCIS denied Plaintiffs' L-visa renewal and effectively ordered Mr. Molloy and his family deported in the middle of the COVID-19 crisis. *See* Ex. 3.

47.     Defendants' decision insists entirely of a "gotcha game" where completely new requirements were imposed after the fact on Plaintiffs without citation to statute, regulation, or case law.  In addition, no notice of the new evidentiary standards was provided until *after* the visa had been denied, even though it could have been requested in the RFE.

48.     For instance, there can be no dispute that the RFE specifically asked **only** for "[a] letter from an authorized representative of the U.S. entity describing how the beneficiary will be employed in a managerial position. The letter should describe the beneficiary's typical managerial duties, and the percentage of time to be spent on each," and that the RFE provided the topics the letter should address. *See* Ex. 5. The RFE **never** stated that any specific type of corroborating evidence was required *in addition* to the letter.

49.     By contrast, the denial decision then proceeded to move the goal posts to an entirely different stadium by saying the following:

a.  "Although the record asserts that the beneficiary has discretion over your operation, you did not provide corroborating evidence to demonstrate that the beneficiary has performed the said functions;"

b.  "While there are many assertions regarding the beneficiary's position, assertions without supporting evidence to substantiate such claims are insufficient to establish that the beneficiary primarily performs in a capacity that is deemed managerial in nature. Additional information is needed about the discretion he exercises and the staff he oversees. While the beneficiary may have a subordinate staff and some level of authority in your organization, USCIS cannot establish that his position is not of a first-line supervisor overseeing non-professional, managerial, or supervisory employees."

*See* Ex. 3.

50.     The problem with Defendants' decision is that the Plaintiffs are unfortunately not mind-readers.  There are only three sources that Plaintiffs know of to determine what evidence to provide in an L-1 visa application; a) the statutes [i.e., INA 101(a)(15)(L) INA 214(c)]; b) the regulations [i.e. 8 C.F.R. § 214.2(l)]; and c) the case law.

51.     None of the legal authorities cited in Paragraph 51 require anything like what is stated in the denial decision, which is why the denial decision does not cite to any such authority.

52.     On the contrary, Congress specifically stated that the purpose of the L-visa was to "eliminate problems faced by international companies having offices abroad in transferring key personnel ***freely*** within the organization." Temporary Alien Workers Seeking Classification Under the Immigration and Nationality Act, 52 Fed.Reg. 5738, 5739 (Feb. 26, 1987) (emphasis added).  The entire purpose of the regulations was to "to facilitate the movement of international personnel and to clarify and simplify requirements for classification and admission." *Id.*

53.     The only requirement in the regulation, 8 C.F.R. § 214.2(l)(1)(ii)(B), is to provide evidence that Mr. Molloy "[m]anages the organization, or a department, subdivision, function, or component of the organization;" "[s]upervise[s] and control[s] the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;" "ha[s] the authority to hire and fire or recommend those as well as other personnel actions"; and "[e]xercises discretion over the day-to-day operations of the activity or function for which the employee has authority."

54.     All of this evidence was provided in the letters from Mr. Molloy's international supervisors and the evidence that Mr. Molloy was responsible for managing the entire U.S. operation as well as hiring and firing his U.S. employees.

55.     All that was required here was the application of a modicum of common sense. If there is an employee whose title is Managing Director, who directly and indirectly supervises eleven other employees, and makes over $287,000 per year in total compensation, that individual

is more likely than not an executive or a manager.[1]  The purpose of the statute and the regulations is to prevent visa fraud from fake companies and fake workers—it is not to create a gauntlet of paperwork that is never to be traversed with the real-life impact being chaos in multi-national companies and destruction in the lives of individuals and their families  The fact that Mr. Molloy had already been approved under the exact same facts and using the exact same legal criteria in 2017 only serves to underscore the arbitrariness and capriciousness of Defendants' actions.

## FIRST CAUSE OF ACTION
## (JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT)

56.     Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs 1 through 56 above.

57.     Plaintiff Patrick Michael Molloy was eligible to receive an extension of his L-1 visa status and Plaintiffs Diane Maria Earley and Mario Patrick Molloy were each eligible to receive an extension of their L-2 visa status and should have received an approval as they met all statutory and regulatory requirements for approval.

58.     Defendants' reasoning in their March 18, 2020 denial decision that Mr. Molloy is "not a manager or executive in the United States" is demonstrably false and belied by over 600 pages of record evidence providing clear evidence to the contrary that was not discussed by Defendants in their denial decision.

59.     Defendants' reasoning in their March 18, 2020 denial decision is legally defective as there was no actual legal authority cited to support Defendants' decision.  Defendants' introduction of new evidentiary burdens in the middle of the case was done without any explanation, citation, and without any supportable basis under the law.

60.     Plaintiffs further allege that Defendants' decision of March 18, 2020 was wrong as a matter of law and should be overturned as it invented entirely new evidentiary requirements

---

[1] The burden of proof is on the petitioner to make the requisite showing by a preponderance of the evidence. 8 U.S.C. § 1361; *Matter of Martinez-Gonzalez*, 21 I. & N. Dec. 1035, 1036 (B.I.A. 1997).

out of whole cloth that were not supported by statute, regulation, or case-law.

61.     Defendants' actions were unlawful and Plaintiffs' I-129 Petition and I-539 Petition should not have been denied.  Defendants' denial of the petitions violated the law under 8 CFR § 214.1(c)(4) and is reviewable and should be overturned pursuant to the APA at 5 U.S.C. § 706.

**SECOND CAUSE OF ACTION
(RELIEF REQUESTED UNDER THE DECLARATORY JUDGEMENT
ACT SEEKING REVERSAL OF PLAINTIFFS' I-140 DENIAL)**

62.     Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs 1 through 56 above.

63.     Plaintiffs allege that they are still eligible to have their I-129 and I-539 Immigrant petition and applications approved as they meet all conditions for approval of their extensions of stay.

64.     Plaintiffs aver that, as a matter of law, they have maintained their status and are eligible for an extension of their respective L-visa status.  Plaintiffs further allege that Defendants' decision of March 18, 2020 was wrong as a matter of law and should be overturned as it invented entirely new evidentiary requirements out of whole cloth in the middle of the case that were not supported by statute, regulation, or case law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court:

(1) To enter judgement in the favor of Plaintiffs and against the Defendants, finding the acts of the Defendants complained of herein are in violation of law, and issue an order requiring approval of Plaintiff Patrick Michael Molloy's I-129 Petition for a Nonimmigrant Worker (L-1 status) and Plaintiffs' Diane Maria Earley's and Mario Patrick Molloy's extension of L-2 visa status from March 14, 2020 to March 13, 2022.

(2) To enter a Judgment declaring that Defendants' denial of Plaintiffs' request for an extension of L-visa status is violative of the INA and its attendant regulations; violative of the Administrative Procedure Act; *ultra vires*; arbitrary and capricious, an abuse of discretion and not otherwise in accordance with law; and violative of due process;

(3) To enter an order directing Defendants and their agents to issue immediately all necessary and appropriate documents to Plaintiffs to evidence the approval of their visa petitions from March 14, 2020 to March 13, 2022;

(4) To enter an order awarding Plaintiffs their attorneys' fees and costs; and

(5) To enter an order granting such other relief as the Court may deem just, equitable, and proper including discovery into why Defendants improperly changed the decision in this case, who issued the order to change the decision, and on what basis was the decision changed.

Dated: April 24, 2020                           Respectfully submitted,

                                                /s/ Leon Fresco
                                                LEON FRESCO
                                                HOLLAND & KNIGHT LLP
                                                801 17th Street, NW, Suite 110
                                                Washington, DC 20006
                                                Telephone: (202)469-5129
                                                Fax: (202)955-5564
                                                Email: leon.fresco@hklaw.com